## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

EDDIE ROOSEVELT HANDS

        Defendant.

CRIMINAL ACTION NO. 97-0024-CB

CIVIL ACTION NO. 99-1087-CB

### ORDER

Defendant has filed a Motion (doc 218) to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. §2255.  The following other motions filed by defendant remain pending:

Motion to Vacate Forfeiture pursuant to Fed.R.Civ.P. 60(b);

Motion (doc. 215) to Dismiss for Lack of Jurisdiction;

First Motion (doc. 222) to Supplement Motion to Vacate; and

Motion (doc. 234) to Supplement Motion to Vacate.

#### Motion to Vacate Forfeiture–Rule 60(b) Motion

Defendant filed this motion *pro se*, seeking to attack the final criminal order of forfeiture with a motion brought under the authority of Rule 60(b) of the Federal Rules of <u>Civil</u> Procedure.  This is procedurally improper and the court lacks jurisdiction to grant the requested relief under that rule.  See *U.S. v. Mosavi*, 138 F.3d 1365 (11th Cir. 1998.).

#### Motion to Dismiss for Lack of Jurisdiction

In his *pro se* Motion (doc. 215) to Dismiss for Lack of Jurisdiction, defendant concocted an elaborate argument that the court lacked "exclusive jurisdiction" over this case and thus that the conviction

and sentence were void.  Defendant has also filed numerous other *pro se* motions while represented by

counsel, which have been stricken on that basis.  This motion is likewise subject to being stricken on the

same basis; however, as this motion involves a challenge to the court's jurisdiction, a determination on the

merits appears appropriate.

As cogently stated in the government's brief, defendant's jurisdictional argument is without merit.

> "A federal district court has personal jurisdiction to try any defendant brought before it on
> a federal indictment charging a violation of federal law." *United States v. Rendon*, 354
> F.3d 1320, 1326 (11th Cir. 2003) (citations omitted). The superseding indictment
> unambiguously charged the defendant with violations of 21 U.S.C. § 846 and 21 U.S.C.
> § 841(a)(1) in the Southern District of Alabama, Southern and Northern Divisions, from
> a time beginning in 1969 and continuing through on or about February 21, 1997, and it
> further included a criminal forfeiture count. (Doc. 21.) Without question, the district court
> had jurisdiction over the defendant.

Similarly, there is no legal basis for the defendant's claim that the United States Attorney lacked

standing to prosecute the federal criminal charges raised in this action.

Additionally, in the memorandum in support of defendant's petition, defendant's counsel has raised

a separate ineffective assistance challenge based on the failure of counsel to argue that the court did not

have jurisdiction because of the lack of an entry for cocaine base or 'crack cocaine' on the schedule of

controlled substances .  The court addresses that argument separately, below.

<u>Motions to Amend</u>

Two motions to amend the underlying motion to vacate remain pending.[1]  The government has not

---

[1]

    The court has previously stricken (doc. 225) a motion to amend filed *pro se* by petitioner while
represented by counsel.

objected to either motion, but has responded to the merits of each amendment.  Nonetheless, as neither of the motions to amend were filed within the one-year filing requirement of §2255, the court considers whether the proposed amendments can be deemed to relate back to the timely claims in the original petition.  See *Jackson v. Secretary for Dept. Of Corrections*, 292 F.3d 1347 (11th Cir. 2002) (Court has discretion to raise, *sua sponte*, issue of timeliness under AEDPA limitations period).

The standard for relation back of amendments to a petition under §2255 is well-established.

> [C]ourts have typically applied Federal Rule of Civil Procedure 15 to the amendment of a § 2255 motion. ...
> ... Under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment. ...  Where the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied. ...
>  When proposed claims in an amendment are barred by the statute of limitations, Rule 15(c) provides for the relation back of amendments to the original pleading under certain circumstances.  Relation back is permitted when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth ... in the original pleading."

*U.S. v. Pittman*, 209 F.3d 314, 316-17 (4th Cir. 2000)(citations omitted).

> [F]or an untimely § 2255 claim to "relate back" under Rule 15(c), the untimely claim must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings.  Instead, in order to relate back, the untimely claim must have arisen from the "same set of facts" as the timely filed claim, not from separate conduct or a separate occurrence in "both time and type."

*Id.* at 1222 (citations omitted)(quoting *Davenport v. United States,* 217 F.3d 1341 (11th Cir. 2000)).

> Congress intended Rule 15(c) to be used for a relatively narrow purpose.  In the Advisory Committee Note to the 1991 amendments to Rule 15, the advisory committee states that "[t]he rule has been revised to prevent parties against whom claims are made from taking unjust advantage of otherwise inconsequential pleading errors to sustain a limitations defense."  Congress did not intend Rule 15(c) to be so broad as to allow an amended pleading to add an entirely new claim based on a different set of facts. ... Thus, while Rule 15(c) contemplates that parties may correct technical deficiencies or expand facts alleged in the original pleading, it does not permit an entirely different transaction to be alleged by

3

amendment.

*Dean v. U.S.*, 278 F.3d 1218, 1221 (11th Cir. 2002)(citations omitted).

The first Motion (doc. 222) to Amend was not filed within the one-year limitations period of §2255. It offers two additional grounds for his claim of ineffective assistance of counsel. The first claim raised by the amendment is that the defendant's trial and appellate attorneys were ineffective for failing to argue the lack of federal jurisdiction to indict, try and sentence defendant for 'cocaine base' because that substance was not separately listed in the schedule of controlled substances. The second claim is that trial counsel was ineffective for failing to raise and argue that the co-conspirator witnesses' acceptance of the government's plea agreements was illegal pursuant to 18 U.S.C. §201 (c)(3) which prohibits giving or accepting anything of value in return for testimony.

Each of these new claims was presented as another instance of ineffective assistance of counsel; the petition includes claims for ineffective assistance by both trial and appellate counsel. Those claims were presented in the original petition but, with the possible exception of the claim of ineffective assistance of appellate counsel for failing to argue the lack of jurisdiction, the factual bases for the claims did not include those facts raised by either of the amended claim.

With regard to the appellate claim, the petition lists failure to raise a jurisdictional claim as a basis, but neither it nor the supporting memorandum offers any specifics about or facts underpinning that claim. From hints in the style and form of the motion and the memorandum, the habeas motion appears to have been completed in significant part by plaintiff rather than by counsel. The memorandum prepared by counsel does not contain argument concerning a jurisdictional claim. Defendant also filed a *pro se* Motion

to Dismiss for lack of jurisdiction immediately prior to the §2255 petition.[2]  It thus appears likely that the claim included in defendant's petition was based on the same issue raised in defendant's *pro se* motion rather that the somewhat more cogent theory espoused by his attorney in the Motion to Amend.   It is defendant's burden to demonstrate that he should be allowed to amend to add these facially-untimely claims and that they would relate back to the timely claims, but he has failed to do so.  The court could allow additional submissions and/or hold a hearing to determine the nature of the jurisdictional claim contained in the original petition.  It is not, however, necessary to determine that issue at present.  As the court would deny relief on this claim regardless of whether it is found to be timely, a definitive answer to that issue is unnecessary.  Accordingly, the court presumes, for purposes of analysis only, that this issue was timely raised and addresses the merits of this claim in the context of defendant's claim of ineffective assistance of appellate counsel.

The court finds that the remaining proposed amendments concerning the alleged ineffective assistance of trial counsel are not sufficiently related to any of the timely-made claims[3] to justify relation

---

[2]

   That *pro se* motion is addressed above.

[3]  Defendant's timely claims include:
1) Ineffective Assistance of Counsel–pretrial, trial and sentencing–based on counsel's failure to:
    seek dismissal for double jeopardy due to gross prosecutorial misconduct;
    seek to exclude defendant's statement at arrest;
    challenge inadmissible evidence;
    seek mistrial for prosecutorial misconduct;
    "assert right" of defendant to testify in own behalf;
    advocate correct forfeiture law regarding untimely forfeiture order;
    have two sidebar conferences recorded;
    request a hearing prior to the hearsay testimony of the co-conspirators;
    object to jury instructions as given as to the indictment;
    object to constructive amendment of indictment;

back of the amendments to avoid the one-year limitations period.  The court thus finds these claims to be untimely.

As a further basis for the ruling, the court notes that, were the court to address these claims on the merits, it would deny relief for the reasons set forth in the government's response.  The failure to raise either issue was not so fundamentally unreasonable that any minimally effective attorney would necessarily have raised and argued those positions.  Defendant thus failed to demonstrate that his attorney's claims were below the threshold of reasonableness so as to render counsel constitutionally ineffective.  Further, defendant has not demonstrated prejudice from any purported error in these matters.

The second Motion (doc. 234) to Amend was also filed more than one year after defendant's judgment of conviction became final.  The motion seeks leave to amend to raise a claim based on *Blakely v. Washington*, — U.S. —, 124 S.Ct. 2531 (2004).  The amendment does not appear to relate back to any timely-made claim in this habeas action.

_____

subpoena witnesses for sentencing hearing to refute obstruction of justice enhancement;
present vital defense witness due to misunderstanding of conflict of interest;
assist in plea negotiations.
2) that defendant was denied a Fair Trial by the following prosecutorial misconduct:
knowingly offering hearsay testimony;
knowingly offering testimony of witnesses given in return for plea deal;
making and presenting improper statements;
3) that the trial court lacked subject matter jurisdiction.
4)  Ineffective Assistance of Appellate Counsel based on the failure to raise the following issues:
lack of federal jurisdiction;
prosecutorial misconduct;
actual innocence claim of defendant.
Not all of the claims cited in the motion are briefed by counsel.  The court, in determining what issues to analyze, utilizes the issues as formulated in the brief.  Defendant has failed to bear his burden as to any claims identified but not briefed.

6

Defendant asserts–without citation to the record–that he had previously raised and preserved a *Blakely*-style argument in this court and thereafter in the Court of Appeals. The Supreme Court has since applied *Blakely* to the United States Sentencing Guidelines. See *U.S. v. Booker*, --- U.S. ----, 125 S.Ct. 738 (2005). Thus, defendant's *Blakely* arguments now more directly involve the *Booker* decision. See *Varela v. U.S.*, 400 F.3d 864, 865 n.1 (11th Cir. 2005). The Eleventh Circuit has held that *Booker* does not apply retroactively to cases on collateral attack. *Varela*, *supra*. Thus, defendant's bald assertion that the issue was previously raised is clearly insufficient to justify application of the *Booker* rule to this action. However, as the allegation raises the possibility that the issue may have been preserved and to allow the defendant an opportunity to argue that the preservation of the issue would be sufficient to render it timely, the court will allow defendant an opportunity to supplement his submission on this point, and for the government to respond. The court withholds ruling on the motion to amend to add the *Blakely/Booker* claim.

## Habeas Standard

Habeas relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." *Id.* at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. *Addonizio v. United States*, 442 U.S. 178, 185 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1994).

7

In general, claims not raised on direct appeal may not be considered on collateral attack.  A petitioner can, however, overcome his procedural default of claims not raised on direct appeal.  The burden a petitioner must meet differs, depending upon the type of claim he raises.  First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted).  A petitioner's burden with regard to constitutional claims not presented on direct appeal is slightly less stringent.  Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors." *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990).

One way a petitioner may overcome a procedural default is by demonstrating that the default was due to constitutionally ineffective performance by counsel.  *Cross*, 893 F.2d at 1290.  To establish ineffective assistance of counsel, a petitioner "must show that his attorney's performance was deficient and that the deficiency was prejudicial." *Id.*  However, "[c]onclusory allegations of ineffective assistance are insufficient" *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7 th Cir. 1991)).  Furthermore, "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance of counsel." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994).

> *Murray* [*v. Carrier*, 477 U.S. 478, 488 (1986)] teaches that a prisoner collaterally attacking his conviction can establish cause for a procedural default if he can show that "some objective factor external to the defense impeded counsel's efforts to comply with the ... procedural rule," or that his attorney's performance failed to meet the *Strickland* standard for effective assistance of counsel. *Id.* at 488, 106 S.Ct. at 2645.  Choosing the

8

second option, [defendant] brought an independent Sixth Amendment claim of ineffective assistance of counsel.  **Because [defendant] did not pursue the first option by showing some external cause for his procedural default, the district court should have denied the first [court error] claim and focused its attention solely on the second [Sixth Amendment] claim.**

*Reece v. United States*, 119 F.3d 1462, 1465 (11th Cir. 1997)(emphasis added).

An attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland* 466 U.S. at 686.

> When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so.  This burden, which is petitioners' to bear, is and is supposed to be a heavy one.  And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial ... worked adequately.  Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted).

<u>Background</u>

In 1997, defendant was charged in a three-count indictment with violations of 21 U.S.C. §§846, 841(a)(1) and 853.  Count One alleged that, between 1969 and the date of the indictment, defendant had conspired to distribute large amounts of powder cocaine, crack cocaine and marijuana.  Count Two alleged that, on or about a certain date, defendant distributed and possessed with intent to distribute approximately two ounces of powder cocaine.  Count Three sought forfeiture of assets.

Defendant was tried by a jury in 1997, and was convicted on one count of conspiracy to distribute and possess with intent to distribute narcotics and one count of distributing and possession with intent to

distribute cocaine.  The jury also determined that defendant should forfeit the sum of $725,000.  Defendant was sentenced in accordance with the U.S. Sentencing Guidelines.

Defendant appealed his conviction and sentence.  The judgment was reversed by the Court of Appeals.  *U.S. v. Hands*, 184 F.3d 1322 (11th Cir, 1999).

Defendant was again tried by a jury beginning on February 22, 2000; the jury returned a verdict on February 28, 2000, finding defendant guilty on Count One as to cocaine and cocaine base only, and Count Two.  Following a separate hearing, the jury also found that defendant should forfeit $430,000 and certain real property.  Defendant was sentenced to a term of life imprisonment on Count One and twenty years imprisonment on Count Two, to run concurrently.  The conviction and sentence were affirmed on appeal by the Eleventh Circuit.  Defendant filed a Petition for Writ of Certiorari, which was denied on December 16, 2002.

The evidence offered against the defendant at each trial included testimony by five co-conspirators who had agreed to cooperate with the government and defendant's telephone records, firearms, co-conspirators' records of drug transactions with defendant, narcotics supplied by defendant to a co-conspirator and drug paraphenalia owned by co-conspirators.

<u>Analysis–§2255</u>

1.  Ineffective Assistance of Trial Counsel:

Defendant raises numerous bases for his claim that his trial attorneys, W. Gregory Hughes and Richard D. Biggs, were ineffective.

A.  <u>Failure to present a double jeopardy motion at the beginning of the second trial</u>

Defendant asserts that his trial counsel were ineffective because they did not make a motion to

dismiss based on a claim of double jeopardy as a result of what he terms 'gross prosecutorial misconduct' at the defendant's first trial.  This argument is without merit.

Defendant argues that the 'misconduct' in the first trial was intended to provoke a request by defendant for a mistrial, so as to allow the government would have a second chance to present its case. Under such circumstances, retrial is prohibited.  See U.S. v. Dinitz, 424 U.S. 600, 611 (1976). "Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion [. . .] does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." *Oregon v. Kennedy,* 456 U.S. 667, 675-76 (1982).  Defendant has recited several matters which he describes as prosecutorial misconduct[4] but has offered basis from which the court could reasonably find that

the conduct he complains of was intended to goad defendant into making a request for a mistrial. Without such a finding, defendant cannot demonstrate the prejudice prong of *Strickland*.  Nor can defendant prove the deficiency prong without proof that his attorneys at his second trial were aware of evidence tending to demonstrate that the government had intended its actions in the first trial to have caused defendant to make a mistrial request; defendant has failed to show that his attorneys were constitutionally ineffective by failing to raise such a matter by motion prior to the second trial.  Defendant's claim is thus due to be denied on this basis.

B.  Failure to 'assert' the defendant's right to testify

Defendant does not indicate precisely what any competent counsel would have done that his

---

[4]   The challenged actions include introduction of evidence of spousal abuse and various comments during the prosecution's closing argument.

attorneys did not do with regard to putting defendant on the stand. The court asked defendant whether he desired to testify, and explained his 'absolute right' to testify, despite counsel's statement that, in his opinion, it would be a bad tactical decision. Following the government's closing argument, defendant expressed his desire that the court reopen the case to allow him to testify. As noted in the government's brief, the court conducted a colloquy with defendant outside the presence of the jury and determined that defendant had simply changed his mind too late.

Defendant now claims that, on the advice of counsel, he initially lied to the court regarding his desire to testify, and then demanded that his attorney raise it with the court at the close of the case. In addition to the inherent incredibility of this story and its 'convenience' in light of his current goals, the matter has already been heard and defendant's desire to testify found to have come too late. The record demonstrates that there is no factual dispute sufficient to justify a hearing or to support defendant's claim. This basis of the motion is without factual basis.

C.  Failure to have two sidebar discussions recorded

This argument ties in to his claim to have suffered from his attorney's failure to allow him to testify. The argument is without merit. The court finds that its contemporaneous summary of the sidebar conferences is a sufficient basis for review and that the record as it exists is sufficient to contradict any claim that defendant did not knowingly waive his right to testify.

D.  Failure to request an evidentiary ruling on admissibility of co-conspirator statements before trial or at close of the government's case pursuant to FRE 801(d)(2)(E)

Defendant's theory is that, under the Supreme Court's decision in *Bourjaily v. U.S.*, 483 U.S. 171 (1987), the court must rule at some point in the trial that the testimony of co-conspirators is admissible but

that his attorneys were ineffective for failing to seek a ruling on that matter prior to trial or at the close of the government's case in chief.  The court found the evidence admissible at the time it was presented. Defendant has failed to demonstrate that a request for a ruling at any certain time would have been honored, or that, if such a request were made and granted, it would have led to any different result in the admission of that evidence or the ultimate conviction of the defendant.  Defendant thus fails to satisfy either the deficiency or prejudice prongs of the *Strickland* standard.

E.   Failure to move for a mistrial during the examination of one of the co-conspirators

Defendant argues that his attorney was constitutionally ineffective because he failed to move for a mistrial after co-conspirator James Parrish testified that defendant was "dangerous as a rattlesnake." Defendant's counsel made an immediate objection and raised the issue of a mistrial.  The court denied the motion for mistrial, but placed the burden on the government to demonstrate the relevance of that testimony. The court stated that it would instruct the jury to disregard that statement if the government could not make it relevant.  Following the break, the witness repeated his statement and counsel attempted to have them stricken.  He did not renew his motion for mistrial. As the court had already denied the prior identical motion, there is no reason to believe that it would have granted a mistrial if the request had been renewed. The only potential prejudice defendant could show is that the matter was not preserved for appeal; however, in light of the prior motion and ruling, the matter was clearly preserved.  Defendant can not demonstrate prejudice from the failure to renew the mistrial request.

F.   Failure to 'properly' advise defendant regarding plea negotiations

Defendant asserts, by affidavit, that he expressly instructed his attorneys to accept the government's 20-year plea offer at the conclusion of the government's case but that counsel failed to do so.  The

government offers the affidavits of counsel to the contrary and argues that "this Court should accept the independent and consistent recollections of two officers of the court over the defendant's own self-serving statements that he did not receive ineffective assistance of counsel in plea negotiations." The court does not agree that the status of the attorneys or the number of their affidavits makes it unnecessary to have a hearing.

> In *Gallego* [*v. U.S.*, 174 F.3d 1196 (11th Cir.1999)], an incarcerated defendant filed a motion to vacate his conviction under 28 U.S.C. § 2255, arguing ineffective assistance of counsel. *Id.* at 1197. An evidentiary hearing was held to determine whether Gallego was informed by his attorney of his right to testify at trial. *Id.* The district court found that Gallego was not credible and held that "as a matter of law [a] defendant could not carry his burden without presenting some evidence in addition to his own word, which is contrary to counsel's." *Id.* at 1198. On appeal, we rejected the district court's ruling that an interested attorney (accused of providing ineffective assistance) is automatically considered to be more credible than an interested defendant (seeking vacation of his sentence). *Id.* Instead, we require district courts to conduct a proper credibility determination, which includes looking to "the internal consistency of the [witness's] testimony, or his candor or demeanor on the stand." *Id.*

*U.S. v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (requiring 'proper credibility determination' in conflicting testimony on suppression issue). See also *Gallego*, at 1198 (holding. The court finds that a hearing is necessary where, as here, there is a dispute of fact presented between the sworn statements of defendant and his former counsel.

However, that is not to say that the court finds a full in-person testimonial hearing to be warranted. *Gallego* held that "[t]he fact that defendant's testimony is uncorroborated is not enough standing alone to support a credibility finding" that would render an evidentiary hearing unnecessary. Gallego at 1199. As the Second Circuit made clear in *Chang v. U.S.*, 250 F.3d 79, 85-86 (2d Cir. 2001), it is "within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of

judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other

prisoners to make similar baseless claims that would have resulted from a full testimonial hearing."

The Supreme Court has held that, although a hearing may be warranted, that conclusion does not

> imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations may be. The language of the statute does not strip the district courts of all discretion to exercise their common sense. Indeed, the statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner.
>
> *Machibroda v. United States*, 368 U.S. 487, 495, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). In so holding, the Court relied upon Section 2255 itself, which expressly provides that the "court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

*Chang*, at 85.

In addition to the record and the court's own recollection of the defendant and the proceedings,

the court has before it the affidavits of the defendant and his two former attorneys, all of which address this

claim in varying degrees of specificity. The court recalls the demeanor and general credibility of the

defendant at his trial. Further, the court notes that, in his affidavit, defendant elsewhere admits to having

lied to the court at trial concerning his desire to testify. While the court finds that claim to be incredible, that

very incredibility further undermines defendant's credibility before this court and makes it highly unlikely

that his live testimony at a full-blown testimonial hearing would be sufficient to justify a finding that he has

borne his burden of proof on this point.[5]

---

[5]  See *Ramirez-Chilel*, 289 F.3d at 750 n.6 ("In any case or proceeding in which the defendant testifies, the judge, almost as a reflex process, will form an opinion about the defendant's

Both attorneys offer affidavits detailing the plea offers from the government and their efforts to convince defendant of the reasonableness of accepting the deal.  However, it is not the believability of counsel's testimony that convinces the court that live testimony would be unhelpful, but the incredibility of defendant's affidavit testimony.  Defendant states that "during my trial and when the government rested its case[,] the government initiated plea negotiations and offered me a plea. ...I informed the government that I was willing to accept the offer. ...  [A]ttorney Hughes instructed me not to inform the court of the off-the-record plea negotiation which had occurred."  He claims that Attorney Hughes did not enter into negotiations and "remained silent throughout the entire period of the plea negotiation."  He surmises that Attorney Hughes told him to hide the matter from the court in order to avoid disclosing his own ineffective assistance in relation to the plea.

Defendant's story does not match the manner in which pleas are negotiated by the government in this district.  Most tellingly, had defendant informed the government that he was willing to accept the plea, as he now claims, defendant's counsel's silence would not have derailed that process.  Further, defendant was clearly not the unwitting dupe his affidavit seeks to make him out to be; defendant himself claims to have forced his attorneys to raise the issue of his right to testify following the government's closing argument.  Leaving aside the unlikelihood that two attorneys with no personal stake in the outcome of the trial would have told him to lie to the court about a) his desire to testify and b) the existence of the plea negotiations, the court finds it beyond belief that defendant would meekly have gone along with those requests.  Nor does the 'motive' suggested by defendant make sense; not only was there no situation which

_____

credibility.  Such determination should not, of course, be based on bias or prejudice, but prejudice does not inevitably arise as a result of forming a credibility opinion.")

16

would have called for defendant to have told the court about the missed plea opportunity [other than a habeas petition], but counsel would have had no reason to believe that defendant would have followed such a direction.  Defendant does not even suggest that they offered him an incentive to hide that fact.  Further, had counsel, at that time, recognized that they had "not provided affiant any assistance during the course of the plea negotiations," it would have been a simple matter to have followed up with the government on their allegedly unsolicited plea offer made to them at the close of the case.

The court finds defendant's affidavit on these points to be completely unworthy of credence.  Such a close review of the evidence submitted in addition to the record before the court is a sufficient hearing and adequate basis to deny defendant's claim.  A full testimonial hearing is not warranted or required on this claim.

G.  Failure to call defense witness

Defendant alleges that his attorney, Gregory Hughes, declined to call a witness, Craig Johnson, due to a perceived conflict of interest.  Attorney Hughes had previously represented Mr. Johnson in a separate criminal prosecution.  It is undisputed that there was no actual conflict of interest.  Defendant asserts that Attorney Hughes told him that he could not call Mr. Johnson because he believed that there was a conflict; his attorney disputes this assertion, claiming that the witness was simply one of several witnesses defendant made him subpoena that he later decided at trial not to call for tactical reasons.  He argues that the challenged testimony did not address any of the elements of the crimes charged.

However, as the government points out in its response, even if the court were to credit defendant's version, the evidence at issue is of minimal import.  According to defendant, the witness could have rebutted the testimony of Maurice Scott, one of the co-conspirator witnesses and defendant's nephew, as to Scott's

17

claim to have snorted cocaine with defendant while they were playing basketball.  Defendant was charged with being the kingpin of a large-scale narcotic distribution network over a period of years; neither the evidence that he occasionally supplied and snorted cocaine on social occasions nor the alleged evidence that calls that testimony into question were of particular significance.  At most, defendant's witness could have impeached Scott on this minor point.

Defendant's assertion appears to be that if his attorney had called the witness, and if the jury believed him over Mr. Scott on this relatively minor point, the jury <u>might</u> have been led to question the government's case *in toto*.  In general, the possibility of additional impeachment is insufficient  See *U.S. v. Dekle*, 768 F.2d 1257, 1263 (11th Cir. 1985)(Failure to disclose impeachment evidence was not prejudicial, where it was cumulative of other impeachment offered at trial).  Defendant cites the Eleventh Circuit panel's comments about the evidence offered at the first trial in questionable support of his claim that the evidence at the second trial was weak and was already subject to substantial question.  This argument cuts both ways; the existence of such impeachment evidence makes it less likely that one more piece of potentially-impeaching evidence–which the jury was not required to believe–on an otherwise-insignificant point would have altered the outcome of the trial.  The standard is not a mere possibility of a different outcome–nearly any change in trial strategy or evidence could arguably have such a potential effect.  Defendant bears the burden to show that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland* 466 U.S. at 686.  The court finds that, even if defendant were granted a hearing and the court found his allegations to be credible, he nonetheless can not satisfy the prejudice prong of the *Strickland* test.

H.  <u>Failure to seek suppression or limiting instruction concerning statements defendant made</u>

at the time of his arrest

Defendant does not complain that his attorney failed to object to introduction of defendant's statements: defense counsel objected to these statements during the government's opening statements. Rather, he objects to the fact that counsel did not make his objection in a certain way or at a certain time. Defendant cites–and the court is aware of–no authority requiring that such an objection be raised in a certain manner. The court finds that the failure to raise this issue by pretrial motion was not so unreasonable as to render counsel's representation of the defendant "ineffective."

He also claims that any minimally-effective attorney would have sought a limiting instruction regarding the statements. The court finds that to be inaccurate. The statements at issue, repeated by the government in its opening statement, were "if there are things in the past that [I have] done that [I] need[] to pay for, maybe [I] just need to go do [my] time," and that cooperating with the government was "a good way to get my family hurt." Neither statement is clearly inculpatory. Competent counsel could certainly have decided against a limiting instruction which could have reinforced in the jury's mind the importance of the evidence.

Further, as the government has noted, defendant offers no basis to believe that, had counsel filed a motion to suppress the statements, such a motion would have been granted. Nor has he demonstrated that, had such a motion been filed and had it been granted, the outcome of the trial would have likely have been different. Defendant thus has failed to satisfy either the deficient performance or prejudice prongs of the *Strickland* analysis.

I. Failure to contest the timeliness of the forfeiture order

This claim is without merit. The court adopts the analysis offered by the government in its response.

19

In his ninth allegation, the defendant argues that [] counsel should have contested this Court's forfeiture as untimely entered. The argument is without merit for two reasons. First, the defendant has focused on this Court's December 7, 2000, *final* order of forfeiture without acknowledging this Court's March 17, 2000, order on forfeiture and this Court's June 14, 2000, Judgment. (Docs. 173, 183.) Second, the defendant's argument, citing *United States v. Petrie,* 302 F.3d 1280 (11th Cir. 2002), is based on a version of Rule 32.2 which did not take effect until December 1, 2000, with subsequent amendment effective December 1, 2002.

J.  Failure to object to jury instructions

As made clear by the government's response, defendant's argument is simply a reiteration of a claim made and rejected on direct appeal.  Defendant argued that the instructions effectively amended the indictment as to the amount of drugs.  In its current iteration, defendant's argument is that trial counsel was ineffective for failing to object to the instructions on the amount of drugs because they effectively amended the indictment.  Counsel can not be deemed ineffective for failing to raise an argument which is itself without merit; "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance of counsel." *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994).

K.  Failure to subpoena a potential witness to testify at sentencing

Defendant next challenges his attorney's failure to subpoena Brian Stabler as a witness to testify on his behalf at the sentencing hearing.  Defendant's implied threats to Stabler were the basis of the enhancement for obstruction of justice.  However, Stabler testified at the first trial that he didn't perceive defendant's statements as a threat at that time and thereafter did not believe that Stabler could harm him because Stabler was incarcerated.

Defendant's counsel filed a written objection to the enhancement portion of the PSI and argued that issue unsuccessfully at sentencing.  The court held that Stabler's subjective understanding of the treats

20

was not dispositive of the issue of whether defendant had attempted to obstruct justice. The matter–and specifically Stabler's subjective impressions–was before the court at sentencing. Defendant offers no basis to believe that, had counsel subpoenaed Stabler to testify at the sentencing hearing, the outcome would have been any different. Defendant has thus failed to demonstrate either deficient performance or prejudice.

     L.  Failure to move for mistrial based on purported 'prosecutorial misconduct.'

     As noted by the government, defendant's claim that his attorney should have sought a mistrial is merely conclusory, offering only a single specific instance. That instance, a co-conspirator's statement that defendant was "dangerous as a rattlesnake," has been addressed above. Defendant has utterly failed to bear his burden on this claim.

2.  Ineffective Assistance of Appellate Counsel:

     A.  Lack of Jurisdiction–Crack Cocaine

     In his memorandum, defendant's attorney raises another purportedly jurisdictional claim. Defendant argues that his attorney fell below the minimum level of competence and was thus ineffective by failing to argue that, because cocaine base is not properly included in the schedule of narcotics, the federal court lacked jurisdiction over the indictment charging crimes involving that substance.

     The government addresses this issue in the context of defendant's claim of ineffective assistance involving trial counsel. For reasons stated above, the court addresses this matter solely in terms of the claim against appellate counsel. However, the issues and arguments are substantially similar. Because the issue is one involving jurisdiction, appellate counsel could arguably have raised it on appeal for the first time.

     It appears clear that defendant's jurisdictional argument is without merit. See e.g. *Sanders v. U.S.*,

21

237 F.3d 184, 185 (2d Cir.2001); *U.S. v. Manzueta*, 167 F.3d 92, 93-94 (1st Cir.1999); *U.S. v. Soto*, 159 F.Supp.2d 39, 48 (E.D. Pa. 2001) (in §2255 context, describing similar claim as "frivolous" and holding "therefore we cannot fault counsel for not raising it."); see also Schedule II to 21 U.S.C. § 812 ("[c]oca leaves ...; cocaine ...; or any compound, mixture, or preparation which contains any quantity of any of the substances referred to in this paragraph.").  Defendant's reply is spent arguing that the claim has some arguable merit despite the lack of decisional authority accepting that position; in the context of a claim that counsel was ineffective for failing to pursue the issue, the mere possibility advanced by defendant that the claim is not completely frivolous is insufficient to satisfy *Strickland*.  As noted above, the very dearth of authority on what ought to be, under defendant's argument, a fundamental issue in every prosecution involving crack cocaine, makes it nearly impossible to conclude that attorneys failing to raise that issue are all constitutionally ineffective.

Conclusion

The court finds that an evidentiary hearing is appropriate on only one claim raised by the defendant: whether trial counsel failed to accept a plea despite defendant's instruction that he do so.  Accordingly, it is hereby **ORDERED**

1) that defendant's Motion to Vacate Forfeiture pursuant to Fed.R.Civ.P. 60(b) is **DENIED**;

2) that defendant's Motion (doc. 215) to Dismiss for Lack of Jurisdiction is **DENIED**;

3) that defendant's Motion (doc. 234) to Supplement Motion to Vacate is **DENIED**;

4) that defendant's First Motion (doc. 222) to Supplement Motion to Vacate is **DENIED in part** as to all matters except the claim that appellate counsel was ineffective for failure to raise the jurisdictional argument that crack cocaine is not made illegal by the statute cited in the indictment;

5) that defendant's §2255 petition, as amended, is **DENIED** as to all claims.

　　　**DONE** this the 18th  day of May, 2005.


　　　　　　　　　　　　　　　　　　　　　　_**s/Charles R. Butler, Jr.**_　　　　　　
　　　　　　　　　　　　　　　　　　　　　　**Senior United States District Judge**